[No. C017968. Third Dist. Nov. 30, 1994.]

HOSSAM BUZGHEIA, Plaintiff and Appellant, v.
LEASCO SIERRA GROVE et al., Defendants and Respondents.

**COUNSEL**

Eisen & Johnston, Jay-Allen Eisen, Karen Leaf, Ann Perrin Farina, Marian M. Johnston and Paul L. Cass for Plaintiff and Appellant.

Brodovsky & Brodovsky, William B. Brodovsky, Theresa M. La Voie, Diepenbrock, Wulff, Plant & Hannegan and Charity Kenyon for Defendants and Respondents.

## OPINION

**MORRISON, J.**—In this appeal we address questions related to the creation and use of personal sureties to stay execution of judgment. We conclude the 1982 enactment of a comprehensive Bond and Undertaking Law (Code Civ. Proc., § 995.010 et seq.) substantially changed the requirements for personal sureties contained in former Code of Civil Procedure section 1057.

Plaintiff, Hossam Buzgheia, appeals the trial court's order overruling his objections to the undertaking posted by defendants to stay enforcement of judgment pending appeal.[1] (Code Civ. Proc., § 917.1.) Plaintiff contends (1) defendant Dale Williams's wife, Kimberly, cannot qualify as a surety because their community assets are subject to execution to pay the judgment, (2) the trial court improperly permitted Williams to use his separate property as security by transferring a portion of it to his wife as her separate property so she would have sufficient assets to act as a surety, and (3) assuming the surety is valid, the undertaking is defective because it must be supported by the equivalent of two sureties who are each worth the amount of the undertaking. Finding no merit in these contentions, we shall affirm the order.[2]

### FACTS

Following a jury verdict in plaintiff's favor for breach of contract, fraud and interference with prospective economic advantage, the court entered a judgment against defendants, including compensatory and punitive damages and costs, in excess of $3 million.[3] Defendants appealed the judgment.

In order to stay enforcement of the judgment, defendants filed two undertakings, one by Kimberly Williams, the wife of Dale Williams, and another

---

[1]The appeal of the underlying case is pending in this court (*Buzgheia v. Leasco Sierra Grove* (C017627, app. pending)).

[2]At oral argument, plaintiff withdrew a fourth contention, that the net worth of the primary personal surety, Kimberly Williams, was created by a fraudulent transfer of Dale Williams's property.

[3]The jury awarded compensatory damages in the amount of $468,786.69 against defendants Leasco Sierra Grove, RGD Trust, Leasco Salishan West, Leasco Realty Company and Dale Williams, individually and as trustee for RGD Trust. The jury awarded punitive damages of $2,001,141.90 against Dale Williams. Attorney fees and costs added more than $700,000 to the amount of the judgment.

by David and Norma Rittenhouse. Kimberly Williams's undertaking and declaration stated her net worth was $6,499,711. The combined net worth relied on by the Rittenhouses for their undertaking was $155,931.

Plaintiff objected to the undertaking on several grounds arguing Kimberly Williams could not qualify as a personal surety because she was Dale Williams's wife and because her apparent net worth was a sham, resulting from a fraudulent transfer. Plaintiff further argued that each of the sureties had to be "sufficient," i.e., demonstrate a net worth of twice the amount of the judgment. Plaintiff also pointed out numerous technical defects in the undertakings. Plaintiff belatedly argued in a reply brief that, if Dale Williams wished to use his own assets to stay enforcement of the judgment, he was required to post cash or its equivalent in liquid assets.

Declarations and exhibits attached to the moving and opposition papers established Dale Williams and Kimberly Williams had entered into both pre- and postnuptial agreements in order to maintain their respective property interests, with few exceptions, as separate property. Following entry of judgment, Dale Williams transferred his separate property interest in three limited partnerships to Kimberly Williams as her separate property. In the opposition to plaintiff's motion, defendants admit the purpose of the transfer was "to provide Kimberly Williams with sufficient separate property to act as surety." Kimberly Williams and the Rittenhouses then posted an undertaking as personal sureties to stay enforcement of the judgment. Prior to the transfer of assets worth approximately $6.5 million to Kimberly Williams, Dale Williams had a net worth in excess of $33 million.

The trial court overruled plaintiff's legal objections to the sufficiency of the sureties but sustained the technical objections to form and amount of the undertaking, granting defendants an opportunity to cure the defects.[4]

Defendants eventually filed an undertaking rectifying the technical errors. The undertaking ultimately filed was a combination of an undertaking by four personal sureties, Kimberly Williams, the Rittenhouses and Norma Hutcherson, and a bond posted by an admitted surety insurer. To create a

[4]The court found: "Kimberly Williams is not disqualified from acting as personal surety for defendant Dale Williams. Code of Civil Procedure § 995.510 provides only that the surety be someone other than the principal, and that the surety's net worth be at least the amount of the bond. Kimberly Williams is not the same person as Dale Williams, and the fact that property described in Mrs. Williams' declaration of qualification was transferred to her by Mr. Williams does not make her so. It appears from the moving papers that the plaintiff may have misconstrued the nature of the undertaking. By agreeing to act as personal surety, Mrs. Williams has not 'pledged' any particular property, but rather has simply agreed to be liable for the debt of Mr. Williams. In the event that Mr. Williams did not pay the judgment after appeal, all of Mrs. Williams' assets would be subject to execution. The property described in

personal surety with sufficient assets, Dale Williams eventually transferred more than $11 million of his own assets to Kimberly Williams.

D<small>ISCUSSION</small>

I

■ Plaintiff contends Kimberly Williams cannot qualify as a surety for Dale Williams because she is his wife and the community assets are already subject to execution to pay the judgment. Plaintiff acknowledges Kimberly Williams's "separate property is not available to satisfy Dale Williams' debts."

It is axiomatic that one may not act as his own surety since a surety is defined as "one who promises to answer for the debt . . . of another, . . ." (Civ. Code, § 2787; Code Civ. Proc., § 995.185.) ■ However, it has long been recognized in this state that a wife may use her separate property to act as a surety for her husband's debts. (*McDonald* v. *Randall* (1903) 139 Cal. 246, 253 [72 P. 997]; *Bull* v. *Coe* (1888) 77 Cal. 54, 61-62 [18 P. 808]; *Anderson* v. *Schaffer* (1929) 98 Cal.App. 457, 460 [277 P. 185].)

■ The evidence before the trial court was that Dale Williams transferred his separate property to his wife as her separate property to increase her net worth so that she could qualify as a personal surety and execute an undertaking to stay execution of the judgment against him and his codefendants. Plaintiff does not dispute these facts. As Kimberly Williams is not a principal, i.e., party to the litigation giving the bond (Code Civ. Proc., § 995.170), and can establish sufficient net worth from her separate property, she is qualified to act as a surety for her husband.

II

Relying on *Markley* v. *Superior Court* (1992) 5 Cal.App.4th 738 [7 Cal.Rptr.2d 328], plaintiff asserts defendants failed to comply with the Bond

---

her declaration is listed in order to qualify her to act as surety, which is a separate and distinct matter from her pledge to be responsible for the debt.

" . . . . . . . . . . . . . . . . . . . .

"The court also finds that the terms of [Code of Civil Procedure] § 995.510 do not require that at least 2 of the personal sureties be worth the amount of the judgment [*sic*]. The provisions of [Code of Civil Procedure] § 995.310 requires 'two or more sufficient sureties.' Section 995.510(b) defines 'sufficient' when there are more that [*sic*] two sureties, providing that the worth of the surety may be less than the amount of the bond as long as the aggregate worth of all sureties is twice the amount of the bond. The decision of Mohn v. Superior Court (1921) 53 Cal.App. 425 [200 P. 360] is inapplicable, in that it construes different statutory language from the current statute. Plaintiff also cites to the court the Law Revision Commission comments regarding § 995.510(b). However, the language of the statute is plain, and this court is bound to follow the clear meaning of the statute, rather than what plaintiff believes that the legislature intended. . . ."

and Undertaking Law as Dale Williams used his own property to create a personal surety in a third party, who could then post an undertaking, rather than depositing cash or other liquid assets to stay enforcement of the judgment.[5]

The Bond and Undertaking Law states: "Unless the statute providing for the bond requires execution by an admitted surety insurer, a bond shall be executed by two or more sufficient personal sureties or by one sufficient admitted surety insurer or by any combination of sufficient personal sureties and admitted surety insurers. . . ." (Code Civ. Proc., § 995.310.) Nonetheless, "[e]xcept to the extent the statute providing for a bond precludes a deposit in lieu of [a] bond or limits the form of deposit, the principal may, instead of giving a bond, deposit with the officer [cash or equivalent liquid assets] [¶] . . . in an amount . . . equal to or in excess of the amount that would be required to be secured by the bond if the bond were given by an admitted surety insurer. . . ." (*Id.*, § 995.710, subds. (a), (b).) The statute describing the undertaking necessary to stay enforcement of a money judgment on appeal does not preclude use of a deposit. (*Id.*, § 917.1, subd. (b).)

Here, defendants relied upon an undertaking, not a deposit. Since the transfer of property to Kimberly Williams was not fraudulent, Dale Williams was not using his own property in lieu of a bond. Thus, Code of Civil Procedure section 995.710 is inapplicable. ■ Nothing in the Bond and Undertaking Law prohibits a transfer of property to create a personal surety.

■ *Markley* v. *Superior Court, supra,* 5 Cal.App.4th 738, cited by plaintiff, is factually distinguishable. In *Markley,* the real party was required to post a bond as a condition of denial of a motion to expunge a lis pendens. Because the real party was unable to post a bond, the trial court ordered him to execute and file a deed to real property in lieu of a bond. The reviewing court held Code of Civil Procedure section 995.710 permitted only a deposit of liquid assets, not a "deposit" of real property in the form of an executed deed. (5 Cal.App.4th at p. 745.) The court further held Code of Civil Procedure former section 409.1, which allowed the trial court to require a bond as a condition of granting or denying a motion to expunge a lis pendens, was not an exception to the Bond and Undertaking Law. Therefore, a deposit of real property could not qualify as an undertaking and the trial court erred in specifying such a substitution. (5 Cal.App.4th at pp. 746-747.)

---

[5]Defendants contend the issue is not properly before us as it was not raised in the trial court. The issue was first raised in plaintiff's reply in the trial court and was argued, without objection, at the hearing. The trial court's written opinion does not address the issue. Nonetheless, as the issue was raised and argued before the trial court, we may address it on the merits.

Here, there was neither an attempt to deposit title to real property in lieu of a cash deposit nor a substitution of an executed deed for an undertaking. Dale Williams transferred property in order to create sufficient net worth in a third party to permit the third party to act as a personal surety. As the decision in *Markley* deals only with a direct transaction pursuant to court order under an unrelated statutory scheme, it sheds no light on the propriety of the third party surety transaction at issue here. Indeed, in the case at bar, no one has pledged property of any sort. Defendants have given a bond by means of personal sureties who executed an undertaking to stay enforcement of the judgment. The declarations of the personal sureties merely list assets to demonstrate their net worth. No property has been deposited with the court and the provisions of Code of Civil Procedure section 995.710 do not apply.

## III

Plaintiff contends the undertaking executed by the personal sureties is inadequate since there must be the equivalent of two independent sureties each of which is worth the amount of the undertaking.

The Bond and Undertaking Law requires that the personal sureties be sufficient. The pertinent part of Code of Civil Procedure section 995.310 provides, ". . . a bond shall be executed by two or more sufficient sureties. . . ." "A personal surety on a bond is sufficient if . . . [t]he surety is worth the amount of the bond in real or personal property. . . ." (*Id.*, § 995.510, subd. (a)(3); see also *id.*, § 995.520, subd. (b)(3).) However, "[i]f the amount of a bond exceeds ten thousand dollars ($10,000) and is executed by more than two personal sureties, the worth of a personal surety may be less than the amount of the bond, so long as the aggregate worth of all sureties executing the bond is twice the amount of the bond." (*Id.*, § 995.510, subd. (b); see also *id.*, § 995.520, subd. (d).)

On its face, the statute does not lend itself to the interpretation urged by plaintiff. The statute clearly states that where, as here, there are more than two personal sureties, the net worth of any particular individual is unimportant as long as the aggregate of all the sureties is twice the amount of the bond. "When statutory language is thus clear and unambiguous there is no need for construction, and courts should not indulge in it." (*Solberg* v. *Superior Court* (1977) 19 Cal.3d 182, 198 [137 Cal.Rptr. 460, 561 P.2d 1148].)

Plaintiff argues that Code of Civil Procedure section 995.510 must be read in harmony with section 995.310's requirement of "two or more sufficient

personal sureties." Section 995.510 may be read in harmony with section 995.310 as it defines the qualifications of a sufficient surety and the plain language of subdivision (b) creates an exception to the "two or more sufficient personal sureties" requirement when the bond exceeds $10,000 and there are more than two personal sureties.

Plaintiff relies on *Mohn* v. *Superior Court* (1921) 53 Cal.App. 425 [200 P. 360] to support his interpretation of the sufficiency requirement. In *Mohn*, the defendant gave an undertaking to stay enforcement of judgment which relied on the worth of six personal sureties. (*Id.* at p. 426.) Although the aggregate of all six sureties was twice the amount of the undertaking, one of the sureties was worth somewhat more than the amount of the undertaking but the aggregate worth of the remaining five sureties was less than the amount of the undertaking.

The statute then in force defining the sufficiency of personal sureties, former Code of Civil Procedure section 1057, stated in relevant part: "In any case where an undertaking or bond is authorized or required by any law of this state, the officer taking the same must . . . require the sureties to accompany it with an affidavit . . . they . . . are each worth the sum specified in the undertaking or bond . . . [however,] when the amount specified in the undertaking or bond exceeds three thousand dollars [$3,000], and there are more than two sureties thereon, they may state in their affidavits that they are severally worth amount less than the amounts specified in the undertaking or bond, if the whole amount is equivalent to that of two sufficient sureties." (Stats. 1907, ch. 245, § 1, pp. 308-309.)

The court in *Mohn* v. *Superior Court, supra,* 53 Cal.App. 425, interpreted this provision to require the equivalent of two separate sufficient personal sureties, i.e., two groups of personal sureties with each group having a net worth of the amount of the undertaking. The court held the statute could not "be construed as authorizing a stay upon an undertaking executed by more than two sureties in the sum required where, in order to constitute an amount equivalent to two sufficient sureties, one of them states he is worth more than the amount therein specified and the total for which the others qualify is less." (*Id.* at p. 428.) Plaintiff argues the undertaking presented by defendants in this case is factually similar to the undertaking in *Mohn* and therefore defective.

*Mohn* v. *Superior Court, supra,* 53 Cal.App. 425, construed a former version of the statute regulating personal sureties and is not controlling. The wording of the present statute is distinctly different from the earlier version

as it omits reference to "two sufficient sureties" and requires only that the aggregate worth of all sureties be "twice the amount of the bond."[6]

Plaintiff argues this formulation violates the spirit of the Bond and Undertaking Law which, in plaintiff's view, is to provide the judgment creditor with the maximum protection of two independent sureties. However, the unambiguous wording of Code of Civil Procedure section 995.510, subdivision (b) allows of no other reasonable interpretation.

■ The California Law Revision Commission, which drafted the current language of the Bond and Undertaking Law, implies that the present wording of the statute regulating personal sureties is no more than a cosmetic change from the prior statutory scheme. (See Cal. Law Revision Com. com., 18 West's Ann. Code Civ. Proc. (1994 pocket supp.) §§ 995.310, pp. 53, 58-59 [the section "continues the requirement of two or more personal sureties"], 995.510 ["clarifying changes"], 995.520 [the section "continues the substance of the first sentence of the first paragraph of former Section 1057"].) The implication is at the very least misleading. The unambiguous terms of the present statute constitute a substantial departure from the surety law as set forth in former Code of Civil Procedure section 1057 and construed in *Mohn*. Plaintiff's concerns about the present form of the statute should be addressed to the Legislature, not to the courts.

The trial court did not err in overruling plaintiff's legal objections to defendants' undertaking.

### DISPOSITION

The order is affirmed.

Blease, Acting P. J., and Scotland, J., concurred.

A petition for a rehearing was denied December 27, 1994, and appellant's petition for review by the Supreme Court was denied March 2, 1995.

---

[6]We recognize that the language of Code of Civil Procedure section 995.510 could lead to unusual results. For example: if the bond amount was $100,000, and surety A was worth $199,990 and surety B was worth only $10, the sureties would not qualify. However, by adding a third surety worth $10 or less the sureties would qualify. Nevertheless, this does not authorize us to rewrite the statute to avoid a result compelled by its unambiguous language. (*Security Pacific National Bank* v. *Wozab* (1980) 51 Cal.3d 991, 998 [275 Cal.Rptr. 201, 800 P.2d 557].)